## TYE vs MANLEY.

Opinion rendered Sept. 26, 1907).

(104 S. W. Rep. 636).

1. *Trusts—Evidence.*

    The evidence was held to support a finding that at the time of his purchase a purchaser either knew or should have known that a third person had the legal title placed in the purchaser's grantor to defraud the owner, authorizing a degree judging the purchaser to be holder of the title in trust for the owner.

2. *Appeal—Error.*

    An Appellate Court will not reverse a case on account of error, when the result would have remained unchanged had the error not been made.

3. *Report—Construction.*

    In a suit by an equitable owner charging a purchaser as trustee of the legal title, where it appeared that a third person, in order to defraud the equitable owner, had, had the name of the grantor of the purchaser placed in the title, and the master reported that grantor had no right in the property recommending that the purchaser execute a deed to the equitable owner, the finding was not inconsistent with such recommendation.

Appeal from the United States Court for the Western District of the Indian Territory, before Justice Louis Sulzbacher; August 3, 1905.

Suit by W. R. Manley against J. C. Tye. From a decree for complainant, defendant appeals. Affirmed.

*Clarence L. Leeds* and *T. J. Lillard*, for appellant.

*John L. Maynard*, for appellee.

Gill, C. J. On October 7, 1903, W. R. Manley filed a complaint in equity in the United States District Court for the Western District of the Indian Territory at Sapulpa against Hester Nunnery, J. C. Tye, and Nate Hilderbrand, alleging in substance, as follows: That he is the owner of lots 1 to 12, inclusive, in block 38 (being block 2 in Cantrell addition to Bristow); that he purchased the same from J. M. Longfellow about August 7, 1900; that he, the said Manley, caused improvements to be made on said property, consisting of fencing the same, cutting off timber, and erecting a barn thereon; that he remained in peaceable possession of the same until some time in February, 1902, when the townsite commission for the Creek Nation appeared at Bristow; that he authorized one Joe Eades to act as his agent to secure the scheduling of said lots to himself, and that he paid the said Eades $150 to deposit on the appraisement for that purpose; that said Eades paid the $150 on then appraisement, but had the property scheduled to Hester Nunnery, his sister-in-law, and that a patent issued to the said Hester Nunnery; that Hester Nunnery sold the property to J. C. Tye for $500, but that the money was paid to Eades and Hester Nunnery never received any of it; that at the time Tye bought the property he knew that Hester Nunnery had no right or interest in said lots, and knew that they belonged to the said Manley; that after his purported purchase of the property Tye sold lots 10, 11, and 12 to one Hilderbrand, who also knew that Tye had no interest therein, and he prayed the court that Hester Nunnery be declared trustee in a resulting trust in relation to said property in favor of him, and that she be ordered to execute a deed to him and the deeds to Tye and Hilderbrand be set aside on the ground of fraud.

In October, 1903, personal service of summons was had on
Tye and Hilderbrand and service was had on Hester Nunnery
by publication; the warning order being issued December 9,
1903.    In November, 1903, Tye filed his answer, denying the
material allegations of the complaint, and alleging that he is
a bona fide purchaser for value and justly entitled to the pos-
session of the premises.    On February 23d, the court referred
this case to Hon. Tho. A. Sanson, master in chancery, to take
evidence and report his findings and conclusions.    The master
in his report found the facts to be substantially as set forth
in the complaint as to the said Eades and Tye, and that Hester
Nunnery had "no right or color of right" in the property in
controversy, and that a fraud was perpetrated on the rights
of Manley by Eades in causing the same to be scheduled in his
sister-in-law's name, and that, prior to the execution of the
deed from Hester Nunnery to Tye, that he had knowledge
of such facts as would put an ordinary prudent man upon
inquiry, and that, had he made inquiry, he would have as-
certained that Hester Nunnery was not the owner of said im-
provements upon the property, and had no right, title, or
interest in the same.    From his findings the master made the
following conclusions and recommendations: "Conclusions of
Law: 'From the foregoing findings of fact, I conclude that
the defendant, J. C. Tye, holds the legal title to lots numbered
one (1) to nine (9), inclusive, in block numbered thirty-eight
(38), in the town of Bristow, Western District of Indian Ter-
ritory, in trust for the plaintiff W. R. Manley; but Nate Hilder-
brand is an innocent purchaser of lots (10), eleven (11), and
twelve (12) in said block.    Recommendations:  I therefore
recommend that the court make and enter a decree herein,
directing the said defendant, J. C. Tye, within thirty days
from the rendition of the decree, to execute and deliver to the
plaintiff, W. R. Manley, a good and sufficient conveyance to the
said lots numbered 1 to 9, inclusive, in the said Block number

38, in the town of Bristow, and that upon his failure to do so a commissioner of this court be appointed to make, execute, and deliver such conveyance." On August 3, 1905, the court made and entered a decree declaring that the plantiff was entitled to no relief from Hester Nunnery and Nate Hilderbrand, and dismissing the bill as to them, but finding the equities against J. C. Tye, and directing him to execute and deliver a good and sufficient deed to the said Manley on lots 1 to 9, inclusive, in said block 38, and that, if he failed so to do, the court would appoint a commissioner to do so.

The evidence in this case justifies the action of the court in dismissing the bill of complaint as to Hester Nunnery and Nate Hilderbrand. It also clearly discloses that there was a fraud perpetrated upon the plaintiff Manley by Eades. Eades had disposed of the property to Tye, and left for parts unknown, and does not figure as a party to this suit. The issue, then, in this suit was whether or not Tye was cognizant of the fraud perpetrated by Eades on Manley at the time he purchased the property or was guilty of such negligence in the premises in ascertaining to whom the property belonged as to be a constructive, if not an actual, party to the fraud. The evidence on this point is that Manley bought a part of the lumber which went into the construction of the barn on the premises from Tye; that Tye had been down near the premises and had seen Manley building the barn; that during the time after Manley had purchased the improvements from Longfellow, and before the townsite commission scheduled the land to Hester Nunnery, Longfellow, who is a brother-in-law to Manley, rented the premises as agent for Manley; and that Tye was intimately acquainted with Eades and Hester Nunnery. Now, the question is: Are these facts sufficient to demonstrate that Tye did, in fact, know of the fraud perpetrated by Eades on Manley, or if they do not show that he knew of the fraud, are they of such a nature as to put an ordinarily prudent man upon inquiry

to ascertain the true status of the respective rights of the parties to the property?

The deeds or bills of sale by which Manley acquired his interests do not appear to have been recorded. On the other hand, the patent to Hester Nunnery and deed from her to Tye were duly placed of record. The only theory upon which the decree of the lower court can be sustained is by answering the question propounded in the preceding paragraph in the affirmative. The appellant says that the only evidence which sustains the theory that Tye was cognizant of the fraud perpetrated by Eades upon Manley was the fact that he was intimate with both Eades and Hester Nunnery, and that to sustain that theory would be to establish the doctrine that it was safe to deal with a stranger, but dangerous to have dealings with a friend. We are inclined to believe that the fact of the intimacy between Tye and Eades and his sister-in-law, taken together with the facts that Manley purchased a part of his lumber for his barn from Tye, and that Tye was in the vicinity of the property and saw Manley building his barn upon the premises, has a strong bearing upon the merits of this case; and we think that the master who presided at the taking of the testimony, and who saw the witnesses and heard their evidence, is more able to judge of the merits of the case and the truthfulness or untruthfulness of the witnesses than we who have the record alone before us, and we are inclined to believe that his judgment in the merits of the case is sustained by the evidence.

The appellant has called our attention to some apparent variances between the complaint and the proof. He has pointed out the fact that the complaint alleges that Manley employed Eades as his agent to have the lots scheduled to him, Manley, whereas the proof shows that Eades acted as the agent of Hester Nunnery in scheduling the lots, and after he had scheduled the lots to her Eades promised Manley to have her deed him

the property, and that then Manley paid to Eades the $150 to apply upon the appraisement. He shows that the bill prays that the deeds from Hester Nunnery to Tye and from Tye to Hilderbrand be declared void, and that Hester Nunnery be ordered to execute him a deed to the property, whereas, the master finds that Hilderbrand is an innocent purchaser for value, and that Tye holds the legal title to lots 1 to 9, inclusive, in trust for the plaintiff, and recommends that Tye be ordered to execute a deed to Manley on said lots 1 to 9.

Appellant also calls our attention to the fact that Manley alleges in his complaint that he made certain improvements on the lands, consisting of cutting down timber, fencing the land, and putting up a barn, whereas the proof shows that the timber had been cut and the fence erected by Longfellow prior to the purchase of the property by Manley, and that Manley only erected the barn on said premises, and that the master who finds that Manley made the improvements as alleged in the complaint made a finding contrary to the evidence. We think that it would have been better had the plaintiff amended his complaint to conform to the proof, for the master's findings to have been based upon the amended complaint and the proof, instead of the original complaint, but, in the absence of a showing that the rights of the appellant were prejudiced by this oversight, we are not disposed to overrule the lower court. An appellate court must render its opinion upon the whole record in a case, and will not reverse a case on error if the result would have been the same had the error not been made.

The appellant sets forth in his assignment of errors that the master finds that Hester Nunnery "has no right or color of title in the property herein," and then recommended that Tye be directed to execute a deed to Manley to the property in question "when the only title the defendant has hereto was derived from the said Hester Nunnery." By referring from to the master's report, we find that he says: "I find that the

said Hester Nunnery had no right or color of right in said property," etc. We conceive that there is a vast difference between color of title and color of right. The first is a technical term, and the latter as used by the master refers in no manner to her legal title, but to her equitable rights in the premises.

In this case, according to the terms of the Creek agreement, the person owing the improvements on town lots at the time they were scheduled by the townsite commission was entitled to have the lots scheduled to him upon payment of the appraisement. The court below found that Manley was the equitable owner of the improvements on the premises in controversy in this suit, and entitled to have the property in controversy scheduled to him, that Eades perpetrated a fraud upon Manley in having the land scheduled to Hester Nunnery, and that Tye, who purchased from her, was cognizant to or should have known had he used ordinary prudence about the fraud perpetrated on Manley, and that, therefore, Tye held the title in trust for Manley, and ordered him to transfer the property to Manley.

We find no error in the record prejudicial to the equitable rights of the appellant. Therefore the decree of the District Court is affirmed.

CLAYTON, TOWNSEND, and LAWRENCE, JJ., concur.